IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-534-F

| | | |
|---|---|---|
| LISA M. MILLER and her husband, ROBERT ANTHONY MILLER, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| | ) | **ORDER** |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

This matter is before the court on the Plaintiffs' Response [DE-56] this court's August 3, 2011, Order [DE-52].

Before the court in that Order was Plaintiffs' Motion to Allow Additional Testimony of Previously Deposed Medical Care Provider [DE-42]. In that motion, Plaintiffs seek permission to obtain, either at trial or in another deposition, further testimony from Dr. Eldad Hadar, a neurosurgeon who had treated Plaintiff Lisa Miller ("Mrs. Miller"). Dr. Hadar had been deposed in November 2010, and in that deposition, refused to opine on what care would have been given to Mrs. Miller on August 24, 2006. The Government opposes the motion.

The court observed in the August 3, 2011, Order that the Government was arguing that soliciting Dr. Hadar's opinion on what actions would have been taken on August 24, 2006, converts him, as Mrs. Miller's treating physician, from a pure fact witness to a hybrid witness–one that is both a fact witness and offering "expert" testimony. The court construed the Government's Response [DE-46] to be, in actuality, a motion under Rule 37(c)(1) to exclude any possible testimony from Dr. Hadar on the care that would or should have been rendered to Mrs.

Miller on August 24, 2006, in light of Plaintiffs' failure to disclose Dr. Hadar as an expert witness and Dr. Hadar's explicit insistence at his deposition that he was unwilling to offer "expert" opinions in this case.

The court therefore directed Plaintiffs to brief the following issues:(1) whether Plaintiffs believe that the additional testimony they seek from Dr. Hadar will convert him into a hybrid witness; (2) if so, whether they were required to identify him as an "expert" or hybrid witness and make other applicable disclosures under Rule 26(a)(2), and (3) why, if they failed to make such required disclosures by the applicable deadlines, their failure is "substantially justified" or "harmless" such that Dr. Hadar may render "expert testimony" to be offered at trial.

Additionally, in the August 3, 2011, Order, the court denied the Government's Motion to Quash Plaintiffs' Subpoena for Deposition Testimony and Production Issued to Dr. Eldad Hadar [DE-50] because the Government lacked standing to challenge the subpoena. Since the filing of the August 3, 2011, Order, Dr. Hadar has filed his own Motion to Quash Plaintiffs' Subpoena for Deposition Testimony and Production of Documents [DE-53], arguing that a subpoena issued by Plaintiffs' attorney as an officer of the Eastern District of North Carolina, commanding Dr. Hadar's attendance at a deposition to be held in Chapel Hill, North Carolina, and to produce documents at that deposition, on August 12, 2011, was facially invalid. In response to Dr. Hadar's Motion to Quash, Plaintiffs filed a Response [DE-57], showing that they had caused another subpoena to be issued from the Middle District of North Carolina. Accordingly, the issues raised by Dr. Hadar's Motion to Quash appear to now be moot.

The mootness of the motion to quash does not, however, resolve the ultimate issue: whether Plaintiffs may solicit additional testimony from Dr. Hadar on the care he would have rendered to her on August 24, 2006. Plaintiffs may still subpoena Dr. Hadar to give live

testimony at the trial[1] or, as they already have done, cause the proper court to issue a subpoena for a *de bene esse* deposition for Dr. Hadar. Accordingly, the court will address whether Plaintiffs may solicit additional testimony from Dr. Hadar on the care he would have rendered Mrs. Miller on August 24, 2006.

In so doing, the court ALLOWS the Government's Motion to file Response to Plaintiff's Brief. The Clerk of Court is DIRECTED to file the Government's Response, currently docketed at DE-58-2.

## A. Applicable Rules

As the court indicated in its August 3, 2011, Order, the court views Rules 26(a) and 37(c) of the Federal Rules of Civil Procedure as controlling the issue presently before the court.

Rule 26(a)(2) provides, in pertinent part, the following:

> **(2)** *Disclosure of Expert Testimony.*
>
> > **(A)** *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
> >
> > **(B)** *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the

---

[1] The briefing indicates that Plaintiffs may believe that the witnesses located in Chapel Hill, North Carolina, are beyond the subpoena power of this court. The court does not agree with this blanket assertion. Specifically, reading Rule 45 as a whole, the court is of the opinion that any witness who is located within the state of North Carolina may be subpoenaed to testify at trial. A witness in Chapel Hill, North Carolina, may, of course, file a motion to quash because he or she is located more than 100 miles from Wilmington, North Carolina. FED. R. CIV. P. 45(c)(3)(B)(iii). Of course, that witness would have the burden of showing that traveling more than 100 miles to the trial in Wilmington would cause him or her "to incur substantial expense." *Id.* Even if the witness met that burden, the court could decline to quash or modify the subpoena, and instead order the appearance of the witness if the serving party "(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship[] and (ii) ensures that the subpoenaed person will be reasonably compensated." FED. R. CIV. P. 45(c)(3)(C).

3

witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. . . .

. . . .

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) *Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

FED. R. CIV. P. 26(a)(2).

Rule 37(c), in turn, provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The exclusion of evidence under Rule 37(c) is an "automatic sanction." *Id.*, advisory committee note (1993).

4

**B. The anticipated testimony of Dr. Hadar makes him an "expert witness" whose identity Plaintiffs had to disclose pursuant to Rule 26(a)(2)(A)**

The parties are in agreement that the testimony Plaintiffs seek from Dr. Hadar would change him from being purely a fact witness to a witness who also would be used at trial "to present evidence under Federal Rules of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). Consequently, Dr. Hadar would be offering testimony as a "hybrid" fact/expert witness and Plaintiffs were required, pursuant to Rule 26(a)(2)(A), to disclose his identity as such a witness. *See id.* ("[A] party mut disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703 and 705."); *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D.Md. 1997)("Rule 26(a)(2)(A) is colloquially said to apply to 'hybrid' fact/expert witnesses, the most frequent example being a treating physician in a personal injury case.").

With regard to *when* Plaintiffs were required to make this disclosure, Rule 26(a)(2)(D)[2] provides that in absence of a stipulation between the parties or a court order, "the disclosures must be made: (i) at least 90 days before the date set out for trial or for the case to be ready for trial; or (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another part under Rule 26(a)(2)(B) or (C), within 30 says after the other party's disclosure." Plaintiffs' first such notice to the Government of Dr. Hadar serving as a hybrid witness at trial was, by their own admission, at the July 11, 2011, pretrial conference. *See* Plaintiffs' Motion to Allow Additional Testimony of a Previously Deposed Medical Care Provider [DE-42] ¶ 2.[3] There can be no dispute that Plaintiffs' disclosure, at that late date, fell

---

[2] Rule 26 was amended, effective December 1, 2010. The previous version of Rule 26 included the deadlines set forth in Rule 26(a)(2)(D) in Rule 26(a)(2)(C).

[3] Plaintiffs erroneously state that the pretrial conference occurred on July 5, 2011.

5

**B. The anticipated testimony of Dr. Hadar makes him an "expert witness" whose identity Plaintiffs had to disclose pursuant to Rule 26(a)(2)(A)**

The parties are in agreement that the testimony Plaintiffs seek from Dr. Hadar would change him from being purely a fact witness to a witness who also would be used at trial "to present evidence under Federal Rules of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). Consequently, Dr. Hadar would be offering testimony as a "hybrid" fact/expert witness and Plaintiffs were required, pursuant to Rule 26(a)(2)(A), to disclose his identity as such a witness. *See id.* ("[A] party mut disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703 and 705."); *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D.Md. 1997)("Rule 26(a)(2)(A) is colloquially said to apply to 'hybrid' fact/expert witnesses, the most frequent example being a treating physician in a personal injury case.").

With regard to *when* Plaintiffs were required to make this disclosure, Rule 26(a)(2)(D)[2] provides that in absence of a stipulation between the parties or a court order, "the disclosures must be made: (i) at least 90 days before the date set out for trial or for the case to be ready for trial; or (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another part under Rule 26(a)(2)(B) or (C), within 30 says after the other party's disclosure." Plaintiffs' first such notice to the Government of Dr. Hadar serving as a hybrid witness at trial was, by their own admission, at the July 11, 2011, pretrial conference. *See* Plaintiffs' Motion to Allow Additional Testimony of a Previously Deposed Medical Care Provider [DE-42] ¶ 2.[3] There can be no dispute that Plaintiffs' disclosure, at that late date, fell

---

[2] Rule 26 was amended, effective December 1, 2010. The previous version of Rule 26 included the deadlines set forth in Rule 26(a)(2)(D) in Rule 26(a)(2)(C).

[3] Plaintiffs erroneously state that the pretrial conference occurred on July 5, 2011.

5

outside any of the possible deadlines set forth in Rule 26(a)(2)(D).[4]

## C. Plaintiffs have failed to establish that their failure to timely disclose Dr. Hadar as a witness offering expert testimony was substantially justified or harmless

Having found that Plaintiffs failed to timely disclose Dr. Hadar as a hybrid witness, Rule 37(c) prohibits Plaintiff from now offering his "opinion" testimony at the trial unless Plaintiffs show that their failure was either substantially justified or harmless. In determining whether a non-disclosure of a witness is substantially justified or harmless, this court must consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack & Fixture v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The first four factors relate to harmlessness, while the last factor relates mainly to substantial justification. *Id.* Importantly, and contrary to Plaintiffs' assertions, Rule 37(c)(1) does not require a showing of bad faith or callous disregard for the discovery rules for the automatic sanction of exclusion to apply. *Hoyle v. Freightliner*, ___ F.3d ___, 2011 WL 1206658 at *4 (4th Cir. 2011).

Plaintiffs have not demonstrated substantial justification for their failure to timely disclose Dr. Hadar as a hybrid witness. Put simply, Plaintiffs dragged their feet. Plaintiffs, at

---

[4] Although there is not conclusive evidence of a stipulation between the parties in the record before the court, the Government's previous filings suggest that the parties agreed that Plaintiffs' Rule 26(a)(2) disclosures were due November 11, 2010. *See* Defendant's Response in Opposition to Plaintiffs' Motion to Allow Additional Testimony, Exs. 1 and 2 [DE-46-2; DE-46-3]. Plaintiffs did not disclose Dr. Hadar as a witness on that date. Even if the court assumes that there was no stipulation between the parties, Plaintiffs' disclosure was still due at least 90 days before the date set out for trial. Moreover, even if the court considers Dr. Hadar's proposed testimony to be offered solely to contradict or rebut evidence offered by Defendants, Plaintiffs still were required to make the disclosure within 30 days of the Government's disclosures, which occurred on February 18, 2011.

6

their peril, waited to depose Drs. Friedman and Sweasey until several months after discovery closed in this matter. During those depositions, Plaintiffs asked questions which elicited answers they do not like, and which, they now claim, have changed their "calculus" on the need for Dr. Hadar's expert testimony. This, however, is not substantial justification. Rather, this is a textbook example of why this court routinely advises parties—and indeed advised the parties in this action—"not to be dilatory in pursuing discovery." Scheduling Order [DE-19] at p. 2. Information is gleaned during discovery which allows parties to "change their calculus" with respect to the litigation. Having waited to glean vital information, Plaintiffs cannot transform what is at best a strategic misstep into substantial justification.

Nor have Plaintiffs demonstrated harmlessness. First, it is no dispute that Dr. Hadar offering his expert opinion comes as a surprise to the Government at this very late stage of the proceedings, especially after Dr. Hadar explicitly stated in his November 2010 deposition that he would not offer such an opinion. Moreover, there is no indication before the court that Plaintiffs have served the disclosures required by Rule 26(a)(2)(C), which include a summary of the facts and opinions to which the witness is expected to testify. In other words, Dr. Hadar's actual opinion may remain a mystery to the Government.

Plaintiffs argue that this surprise to the Government can be cured without disrupting the trial, by virtue of the deposition of Dr. Hadar scheduled for August 12, 2011. In the court's view, this only has the slight potential to cure the surprise to the Government. Indeed, to the extent the August 12, 2011, deposition is a *de bene esse* deposition, there is no cure at all. Even if the August 12, 2011, deposition is solely for discovery purposes, both parties have strongly suggested in their briefing that Dr. Hadar will *not* be available, for whatever reason, to serve as a live witness at trial. If this is true, this means it is likely that another deposition, after August 12,

2011, must be scheduled, in the two weeks leading up to the bench trial in this matter. Moreover, even though the Government anticipates it will offer the testimony of its own experts–Drs. Sweasey and Friedman–at trial, presumably it will want its experts to be able to review the discovery deposition transcript of Dr. Hadar, given that there is no report. *Cf.* Transcript of Dr. Sweasey [DE-47-1] at pp. 19-20 (detailing Plaintiffs counsel's directives to Dr. Sweasey to set out in the errata sheet to the deposition if he disagreed with anything in the previous deposition of Dr. Hadar and the report of Dr. Friedman, explaining, "as you can imagine, I need to know before we head to trial if you're going to say, 'No, Dr. Friedman's out to lunch' or 'Dr. Hadar is out to lunch.' "). The *de bene esse* deposition of Plaintiffs' other proposed expert on neurosurgery, Dr. Morris Soriano, has already been taken, and the Government therefore has probably lost its opportunity to question Dr. Soriano on Dr. Hadar's opinion. In sum, there are many indications that the Government's surprise cannot be cured without continuing the trial in this matter–a bench trial that was set for a date certain, a rare occurrence before the undersigned.

Finally, the court recognizes that Plaintiffs consider Dr. Hadar's opinion on the care that would have been given to Mrs. Miller on August 24, 2006 to be extremely important. But Plaintiffs have another proposed expert, Dr. Soriano, whose *de bene esse* deposition took place after the depositions of Drs. Sweasey and Friedman. It is not apparent from the record before the court why Dr. Soriano's testimony will be insufficient. This is not a fatal blow to Plaintiffs' case.

In sum, Plaintiffs have failed to show either harmlessness or substantial justification. Their request to offer testimony from Dr. Hadar on the care he would have given to Mrs. Miller on August 24, 2006, is DENIED.

8

## D. Conclusion

For the foregoing reasons, the Government's Motion to File Response [DE-58] is ALLOWED, and the Clerk of Court is DIRECTED to docket the Government's Response presently located at DE-58-2. Dr. Hadar's Motion to Quash [DE-53] is DENIED as MOOT. Plaintiffs' Motion to Allow Additional Testimony of a Previously Deposed Medical Care Provider [DE-42] is DENIED to the extent it seeks to elicit testimony from Dr. Eldad Hadar that will be used at trial to present evidence under Federal Rules of Evidence 702, 703, or 705.

SO ORDERED.

This the 8th day of August, 2011.

James C. Fox
Senior United States District Judge